# Supreme Court of Texas

No. 21-0994

LG Chem America, Inc. and LG Chem, Ltd.,
*Petitioners*,

v.

Tommy Morgan,
*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

**Argued March 22, 2023**

JUSTICE HUDDLE delivered the opinion of the Court.

Justice Young did not participate in the decision.

This is a products-liability case in which two nonresident defendants contest personal jurisdiction. The plaintiff bought a lithium-ion battery at a store in Texas and was injured when he used it to charge his e-cigarette. The defendants do not dispute they sold and distributed the same batteries to Texas manufacturers. Yet they urge personal jurisdiction is lacking because they did not send the batteries to Texas for resale to individual consumers to use with e-cigarettes;

rather, they only expected that the manufacturers would incorporate the batteries into branded consumer products, such as cordless power tools and laptop computers. They argue the plaintiff's claims arise out of the use of the battery in a way they never intended by an individual consumer they never targeted and thus are insufficiently related to the defendants' Texas contacts to justify haling them into a Texas court.

We hold, consistent with our precedents, that the minimum-contacts analysis requires evaluation of a defendant's contacts with the forum—Texas—as a whole. Where, as here, a defendant purposefully avails itself of the privilege of doing business in Texas by selling and distributing into Texas the very product that injures a plaintiff, personal jurisdiction is not lacking merely because the plaintiff is outside a segment of the market the defendant targeted. Put differently, the relatedness prong of the minimum-contacts analysis does not require that the plaintiff's claims arise out of a set of facts mirroring the defendant's expectations about the course its product would follow after it entered Texas. The trial court and the court of appeals correctly concluded the exercise of personal jurisdiction over the defendants is, on this record, consistent with due process. We therefore affirm the court of appeals' judgment.

## I.    Background

Tommy Morgan, a Texas resident, was injured when a lithium-ion battery "exploded" in his pocket. Morgan purchased the battery—

2

referred to by its model number, 18650[1]—from Vapor Sense, a store in Texas, to charge an e-cigarette he bought at the same store. The model 18650 battery that injured Morgan was allegedly manufactured by LG Chem, Ltd., a company headquartered in South Korea. Morgan brought products-liability claims[2] against LG Chem and its American distributor, LG Chem America, Inc., as well as the manufacturer of the e-cigarette and Vapor Sense.

Morgan's original petition included the following jurisdictional allegations:

- LG Chem "is in the business of . . . selling, exporting, importing, distributing and/or otherwise introducing lithium-ion batteries into the stream of commerce" and "was conducting business in the State of Texas in a continuous and systematic manner by marketing and/or selling its manufactured products in the State of Texas."

- LG Chem America "works in conjunction with [LG Chem] in the business of . . . selling, exporting, importing, distributing and/or otherwise introducing lithium-ion batteries into the stream of commerce" and "was and continues to conduct business in the State of Texas in a continuous and systematic manner by marketing and/or selling its manufactured products in the State of Texas."

- "[T]he lithium-ion battery that injured [Morgan] was manufactured, marketed, sold, distributed, or otherwise

---

[1] The battery's model number refers to its dimensions—it is 18 mm in diameter, 65 mm in length, and cylindrical in shape. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 501 (9th Cir. 2023).

[2] Morgan asserts the following causes of action: (1) negligence, (2) strict liability for manufacturing defects, (3) strict liability for marketing defects, (4) breach of express warranty, (5) breach of implied warranty, (6) violations of the Deceptive Trade Practices–Consumer Protection Act, and (7) gross negligence.

3

placed into the stream of commerce by [LG Chem America] and/or [LG Chem].”

- “At all relevant times, Defendants were engaged in the business of . . . selling and/or otherwise intentionally placing . . . batteries into the stream of commerce and directing such products to Texas, including the . . . battery that injured [Morgan].”

LG Chem and LG Chem America each filed a special appearance, challenging the court’s personal jurisdiction over them. Each supported its special appearance with an employee’s affidavit. The affidavits averred that neither LG Chem defendant is incorporated or headquartered in Texas. Neither affidavit denied that LG Chem or LG Chem America directed the sale and distribution of its products, including lithium-ion batteries, to Texas. Instead, the affidavits denied the LG Chem defendants sold or distributed their batteries for use by individual consumers or for e-cigarettes. For example, LG Chem’s senior manager, Joon Young Shin, averred that LG Chem “does not distribute, advertise, or sell 18650 cells *directly to consumers*, and has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller to distribute, advertise, or sell [LG Chem]’s lithium-ion power cells *directly to consumers as standalone batteries*” (emphases added). Similarly, LG Chem America’s compliance manager, HyunSoo Kim, averred that LG Chem America “has never sold or distributed any power cells *meant for e-cigarettes or vaping devices*” and “has never authorized any manufacturer, wholesaler, distributor, retailer, or re-seller . . . to advertise, distribute, or sell LG brand power cells in Texas, or anywhere else, *for use by individual consumers as power cells in e-cigarette or vaping devices*” (emphases added).

4

Morgan responded to both special appearances and conceded that neither LG Chem defendant is at home in Texas for purposes of general personal jurisdiction. But Morgan insisted that both are subject to specific personal jurisdiction. In particular, Morgan asserted that LG Chem "directly targets the Texas market [by] shipping lithium-ion batteries, like the battery at issue here, directly into the State of Texas." In support, Morgan submitted a declaration from his attorney with several attachments. The bulk of the attachments consists of over 2,000 pages of spreadsheets, purportedly reflecting U.S. Customs data from November 2006 through May 2019, showing LG Chem's shipments of thousands of products to Texas companies or through Texas ports. Some, but not all, of these entries seemingly show that LG Chem shipped lithium-ion batteries (and specifically model 18650 batteries) to Texas. Many of those shipments were consigned to LG Chem America, a subsidiary that generates about one-fifteenth of its total revenue in Texas and is responsible for "sales and trading" of LG Chem's products.

In reply, the LG Chem defendants argued they are not subject to specific personal jurisdiction because Morgan has not shown that his claims arise from or are related to any purposeful contacts between the LG Chem defendants and Texas. Neither defendant objected to the spreadsheets or other evidence attached to Morgan's responses. Following a hearing at which no additional evidence was offered, the trial court denied both special appearances.

Both LG Chem defendants filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (allowing an appeal from an order granting or denying a defendant's special appearance). The court of

5

appeals affirmed, concluding that each of Morgan's products-liability claims for the LG Chem battery that allegedly injured him in Texas "arises from or relates to [LG Chem]'s conduct in designing and marketing its batteries for the Texas market, and marketing, selling, and distributing them to customers here." 663 S.W.3d 217, 237 (Tex. App.—Houston [1st Dist.] 2020). With respect to LG Chem America, the court likewise concluded that Morgan's claims "arise out of the [LG Chem] batteries that [LG Chem America] marketed, sold, and distributed to customers in Texas, including Morgan." *Id.* at 238. The court of appeals reasoned that both LG Chem defendants could reasonably anticipate being haled into a Texas court when an allegedly defective and unreasonably dangerous LG Chem battery that they sold in Texas causes an injury in Texas. *Id.* at 237, 238–39. The LG Chem defendants filed petitions for review,[3] which we granted.

## II. Applicable Law

A court must have personal jurisdiction over a defendant to issue a binding judgment. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7–8 (Tex. 2021). Texas courts may exercise personal jurisdiction over a nonresident defendant if it is (1) authorized by the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045; and (2) consistent with federal due-process guarantees. *Luciano*, 625 S.W.3d at 8. The long-arm statute permits courts to exercise jurisdiction over a defendant who "does business in this state," which

---

[3] LG Chem and LG Chem America filed separate petitions for review, but they jointly filed a brief on the merits. Nowhere in this Court do the LG Chem defendants suggest that the jurisdictional analysis for LG Chem is different than that for LG Chem America.

6

the Legislature defines to include, among other things, a nonresident defendant who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2).

A nonresident defendant may challenge a Texas court's personal jurisdiction over it by filing a special appearance. TEX. R. CIV. P. 120a. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of the long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The defendant then bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* The defendant can negate personal jurisdiction on either a factual or legal basis. *Id.* at 659. It can present evidence that contradicts the plaintiff's factual allegations supporting the assertion of personal jurisdiction, and the plaintiff can then respond with its own evidence supporting its allegations. *Id.* Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish personal jurisdiction. *Id.* Whether a court has personal jurisdiction over a party is a question of law that we review de novo, although the court may have to resolve questions of fact. *Luciano*, 625 S.W.3d at 8.

A state court's exercise of personal jurisdiction over a nonresident defendant is constrained by the constitutional right to due process. *See* U.S. CONST. amend. XIV, § 1. A tribunal's authority depends on the defendant's having sufficient "minimum contacts" with the forum state such that the maintenance of the suit is reasonable and "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945) (quoting *Milliken v. Meyer*,

311 U.S. 457, 463 (1940)). "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)).

"[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state." *Int'l Shoe*, 326 U.S. at 319; *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."). These benefits and protections include "the enforcement of contracts, the defense of property, [and] the resulting formation of effective markets." *Ford*, 141 S. Ct. at 1029. But the state's assistance creates reciprocal obligations, including an obligation that products the defendant sells or distributes in the state be safe for its citizens to use. *Id.* at 1030. A state's enforcement of that commitment through the exercise of personal jurisdiction can "hardly be said to be undue." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 319).

There are two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Id.* at 1024. Morgan concedes that he cannot establish general jurisdiction. Therefore, the only issue in this case is whether Morgan has established specific personal jurisdiction over the LG Chem defendants.

8

As noted, to establish specific personal jurisdiction over a nonresident defendant, a plaintiff must demonstrate that the defendant has minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Luciano*, 625 S.W.3d at 8. This specific-jurisdiction analysis involves "two co-equal components": purposeful availment and relatedness. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007).

First, the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state. *Luciano*, 625 S.W.3d at 8. In cases involving products liability, this Court has adopted the "stream-of-commerce-plus" standard to establish whether this purposeful availment exists. *See id.* at 13; *Moki Mac*, 221 S.W.3d at 577 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987) (plurality op.)). Under that standard, the defendant's act of placing a product into the stream of commerce does not establish purposeful availment unless there is "additional conduct" evincing "an intent or purpose to serve the market in the forum State." *Moki Mac*, 221 S.W.3d at 577 (quoting *Asahi*, 480 U.S. at 112). Mere knowledge that the defendant's product will reach the forum state is not sufficient. *Luciano*, 625 S.W.3d at 13 (citing *CMMC v. Salinas*, 929 S.W.2d 435, 439 (Tex. 1996)).

Second, the plaintiff's claim must arise out of or relate to the defendant's contacts with the forum. *Id.* at 9. "This so-called relatedness inquiry defines the appropriate 'nexus between the nonresident defendant, the litigation, and the forum.'" *Id.* at 14 (quoting

9

*Moki Mac*, 221 S.W.3d at 579). Under our precedents, the plaintiff must demonstrate a "substantial connection" between the defendant's contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

The U.S. Supreme Court recently examined the relatedness inquiry and explained that, while a plaintiff need not establish a strict causal relationship between the defendant's contacts and the plaintiff's claim, neither is it the case that anything goes. *Ford*, 141 S. Ct. at 1026. *Ford* concerned two lawsuits in which plaintiffs brought products-liability claims against a nonresident car manufacturer after its cars were involved in accidents in the plaintiffs' home states. There was no dispute that Ford purposefully availed itself of the two states' markets, including by advertising and selling its cars (including the two models at issue in the lawsuits) in those states. *Id.* at 1028. But in each case, Ford argued that personal jurisdiction was lacking because it did not sell, design, or manufacture the particular injury-causing car in that state. So, Ford's argument went, its contacts with the forum did not give rise to the plaintiff's claim. *See id.* at 1026. The Court disagreed with Ford, held there was personal jurisdiction, and reaffirmed that specific personal jurisdiction requires a "connection" between a plaintiff's suit and the defendant's activities. *Id.* It concluded a "causal showing" is not required and the relatedness requirement is satisfied when a company "serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1026–27. The Court cautioned, however, that its holding should not be read to suggest that "anything goes." *Id.* at 1026. Rather, there must be "real limits" on the relatedness

inquiry that adequately protect the due-process rights of a foreign defendant. *Id.*

### III.    Analysis

Neither LG Chem defendant disputes that it purposefully availed itself of the privilege of conducting activities in Texas through the sale, shipment, or distribution of model 18650 batteries to Texas manufacturers. Instead, they assert their contacts with Texas should not subject them to personal jurisdiction in this case because Morgan's claims do not arise out of and are insufficiently related to their contacts. In particular, they emphasize that the evidence shows they "never sought to serve a consumer market for 18650 batteries" in Texas.

The LG Chem defendants describe the batteries they manufacture, sell, and distribute as "industrial components"—power cells that are incorporated into battery-powered products like cordless power tools or laptop computers. Morgan, they contend, was injured by something else: a standalone battery marketed and sold to individuals as a "consumer product" by someone outside their intended chain of distribution. Because they target industrial manufacturers and not individual consumers like Morgan, the argument goes, Morgan's claims are not sufficiently related to the defendants' contacts with Texas to justify the exercise of personal jurisdiction.

This Court has never endorsed the LG Chem defendants' proposed granulation of the forum—the State of Texas—into distinct market segments when evaluating personal jurisdiction. Indeed, we recently described the minimum-contacts inquiry as "a 'forum-by-forum' or 'sovereign-by-sovereign' analysis that examines the nature and

11

extent of the defendant's relationship to the forum." *State v. Volkswagen Aktiengesellschaft*, ___ S.W.3d ___, 2023 WL 3262271, at \*7 (Tex. May 5, 2023) (cleaned up).  The purpose of the personal-jurisdiction analysis is to determine whether the forum—the State of Texas—may exercise personal jurisdiction over a defendant consistent with due process.  *See Bristol-Myers*, 582 U.S. at 264 ("[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).  Rather than focusing on the nature and magnitude of their contacts with the sovereign forum and the close relationship of those contacts to this litigation, the LG Chem defendants urge us to shift focus to whether the plaintiff is within a particular Texas market segment—the "industrial component" market—they intended to serve.  The minimum-contacts analysis is concerned with the objective existence, nature, and extent of the Texas contacts rather than the particulars of what the parties thought, said, or intended about the course their product might take after the defendant targeted, and the product entered, Texas.  *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 147 (Tex. 2013).  Accordingly, here, the LG Chem defendants' supposed intent to serve only industrial customers in Texas is of lesser importance than the larger and dispositive question: whether it would violate due process for Texas to exercise personal jurisdiction over the LG Chem defendants

12

when Morgan was injured by the very product—the model 18650 lithium-ion battery—they sold and shipped to Texas by the thousands.[4]

This conclusion is inescapable given our precedents, which uniformly treat the whole forum—the entire state of Texas—as the relevant market in the minimum-contacts analysis. For example, in *Luciano*, we held that a defendant that sold insulation to manufacturers in Texas for installation in Texas homes was subject to personal jurisdiction for claims brought by Texas homeowners for the insulation's alleged defects. With respect to the relatedness inquiry, we stated that "[i]t is sufficient that [the defendant] intended to serve a Texas market for the insulation that the [plaintiffs] allege injured them in this lawsuit." *Luciano*, 625 S.W.3d at 17 (citing *Ford*, 141 S. Ct. at 1028); *see also Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016) ("[S]pecific jurisdiction exists when the plaintiff's claims arise out of or are related to the defendant's contact *with the forum*." (emphasis added) (internal quotations omitted)); *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 230 (Tex. 1991) ("When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contacts *with Texas*." (emphasis added)).

Here, the LG Chem defendants intended to serve the Texas market for their model 18650 batteries—the same model battery that Morgan alleges exploded in his pocket and injured him. The LG Chem

---

[4] As both sides acknowledge, information about the way Morgan used (or misused) the battery and whether the LG Chem defendants authorized that use may be relevant to the merits of Morgan's products-liability claims. We express no opinion on whether it is or on any other aspect of the ultimate merits of Morgan's claims.

defendants urge us to distinguish between the market of sophisticated manufacturers they targeted and the market of individual consumers like Morgan, which they did not target. But there is no requirement for jurisdictional purposes that the market segment the LG Chem defendants served be precisely the same one from which Morgan purchased the battery. The LG Chem defendants undisputedly sold and distributed model 18650 batteries in Texas, and they do not dispute that is the same model battery Morgan alleges injured him in Texas. That is sufficient to satisfy the relatedness prong and establish specific personal jurisdiction in Texas. *Luciano*, 625 S.W.3d at 17; *see Ford*, 141 S. Ct. at 1028 (describing "a strong relationship among the defendant, the forum, and the litigation" as "the essential foundation" of specific jurisdiction (internal quotations omitted)); *Moki Mac*, 221 S.W.3d at 585 (stating that due process is satisfied where there is a "substantial connection" between the defendant's contacts and the operative facts of the litigation).

The LG Chem defendants argue that the Court's analysis must focus on the absence of any intent to serve the market of individual consumers. Otherwise, they contend, they will be subject to jurisdiction without the clear notice that due process requires. *See Ford*, 141 S. Ct. at 1025 (stating that the Court's personal-jurisdiction doctrine "provides defendants with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign'" (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985))). We disagree. As *Ford* teaches, "[a]n automaker regularly marketing a vehicle in a State . . . has 'clear notice' that it will be subject

14

to jurisdiction in the State's courts when the product malfunctions there." *Id.* at 1030 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Texas's exercise of personal jurisdiction over the LG Chem defendants for a claim based on a defective model 18650 battery does not deprive them of due process simply because they may not have anticipated the claim would be brought by someone outside their intended chain of distribution. By selling and distributing model 18650 batteries in Texas, the LG Chem defendants purposefully availed themselves of Texas and have enjoyed the benefits and protection of Texas laws. *Id.* at 1029 (citing *Int'l Shoe*, 326 U.S. at 319). Texas's enforcement of the LG Chem defendants' reciprocal obligation to ensure that its model 18650 batteries are safe for Texas citizens can "hardly be said to be undue." *Id.* at 1030 (quoting *Int'l Shoe*, 326 U.S. at 319).

The LG Chem defendants also assert that clear notice is lacking because they cannot structure their Texas-directed conduct to avoid exposure to consumer lawsuits such as Morgan's other than by choosing not to sell its product in Texas at all. *See id.* (observing that clear notice of a state's potential exercise of jurisdiction allows a defendant to structure its primary conduct to "lessen or even avoid the costs of state-court litigation"). But avoiding the Texas market altogether is not a defendant's only option. Defendants can also "act to alleviate the risk of burdensome litigation by procuring insurance [or] passing the expected costs on to customers." *Id.* at 1027 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

Finally, we recognize multiple decisions of our courts of appeals, at least one Texas federal district court, and courts in other jurisdictions

15

involving factually similar claims against the LG Chem defendants or other battery manufacturers yielding seemingly conflicting conclusions about whether personal jurisdiction exists.[5] The result in each case is, of course, dependent on the particular record before the court, including the evidence presented to establish the existence of both purposeful availment and relatedness. *See Kulko v. Superior Ct.*, 436 U.S. 84, 92 (1978) ("[T]he 'minimum contacts' test . . . is not susceptible of mechanical application; rather, the facts of each case must be weighed . . . ."); *see also Ethridge v. Samsung SDI Co.*, 617 F. Supp. 3d 638, 652 (S.D. Tex. 2022) (noting the defendant described the plaintiff's evidence of the defendant's battery shipments into Texas as "not only inadmissible and unpersuasive, but also paltry compared to" the evidence of LG Chem's shipments in this case). While we disapprove of any reliance on the argument that the LG Chem defendants' intent to serve the industrial versus the individual-consumer market segment for

---

[5] *See, e.g.*, *LG Chem, Ltd. v. Tullis*, No. 05-21-01056-CV, 2022 WL 16959264, at *6 (Tex. App.—Dallas Nov. 16, 2022, pet. filed) (affirming the trial court's denial of LG Chem's special appearance); *LG Chem Am., Inc. v. Zapata*, No. 14-21-00695-CV, 2022 WL 16559339, at *6 (Tex. App.—Houston [14th Dist.] Nov. 1, 2022, no pet.) (reversing the trial court's denial of special appearances by LG Chem and LG Chem America); *Hause v. LG Chem, Ltd.*, 658 S.W.3d 714, 733 (Tex. App.—El Paso 2022, pet. filed) (reversing the trial court's grant of LG Chem's special appearance); *Dilworth v. LG Chem, Ltd.*, 355 So. 3d 201, 211 (Miss. 2022) (reversing the trial court's dismissal of claims against LG Chem and LG Chem America but remanding the claim against LG Chem America for jurisdictional discovery); *LG Chem, Ltd. v. Superior Ct.*, 295 Cal. Rptr. 3d 661, 682 (Ct. App. 2022) (concluding that the plaintiff failed to establish the court's personal jurisdiction over LG Chem); *see also Ethridge v. Samsung SDI Co.*, 617 F. Supp. 3d 638, 653 (S.D. Tex. 2022) (concluding that a plaintiff alleging similar facts against a different nonresident battery manufacturer failed to establish the court's personal jurisdiction over the defendant).

model 18650 batteries necessarily defeats relatedness, we express no opinion on whether these cases, each of which is accompanied by a unique evidentiary record, were correctly decided.

## IV.   Conclusion

LG Chem and LG Chem America do not dispute that they purposefully availed themselves of the privilege of doing business in Texas by selling and distributing their model 18650 batteries in Texas. Morgan alleges he was injured by a defective model 18650 battery manufactured by LG Chem.  Despite the LG Chem defendants' claim that they did not intend to serve a market for individual e-cigarette battery consumers such as Morgan, we hold that Morgan's claims are sufficiently related to the LG Chem defendants' undisputed contacts with Texas to satisfy due process.  Because the LG Chem defendants are subject to specific personal jurisdiction in Texas in this case, we affirm the court of appeals' judgment.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** May 19, 2023